MICHAEL RYAN, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. In order to bring a review, on writ of error in a criminal cause, within the statute authorizing the return with the writ of the "entire record of the proceedings had upon the trial," such entire record must be certified by the trial court.

2. Illegal evidence will work a reversal except where it is clear that it cannot have harmed the exceptant.

3. Competency of proof in a criminal cause of the commission by the defendant of offences similar to that charged, considered.

On error to Supreme Court.   For opinion of the Supreme Court, see *ante p.* 33.

For the plaintiff in error, *Ernest H. Koester* and *Abram Q. Garretson.*

For the defendant in error, *Peter W. Stagg*, prosecutor of the pleas.

The opinion of the court was delivered by

COLLINS, J.  Michael Ryan was convicted in the Court of General Quarter Sessions of the Peace of the county of Bergen, upon an indictment based on the act of March 30th, 1888 (*Gen. Stat., p.* 1097, *pl.* 254), which indictment reads as follows:

"Bergen county, to wit: The grand inquest of the State of New Jersey, in and for the county of Bergen, upon their respective oaths, present, that Michael Ryan, Edward Lyons and Charles Adams, late of the township of Union, in the said county of Bergen, on the seventh day of March, in the year of our Lord one thousand eight hundred and ninety-five, and on divers other days and times between that day and the twenty-fourth day of May, in the year one thousand eight hundred and ninety-five, with force and arms at the township aforesaid, in the county aforesaid, and within the jurisdiction of this court, did keep and maintain a certain house, and in the said house, on the said day and on the said other days and times were then and there unlawfully, feloniously, willfully, corruptly and with evil intent engaged in a certain illegal and unlawful scheme and device, and in furtherance of the said illegal and unlawful scheme and device the said Michael Ryan, Edward Lyons and Charles Adams, were then and there unlawfully, willfully, feloniously, corruptly and with evil intent engaged in and aiding, assisting and abetting in offering and purporting to offer for sale, exchange and distribution to one Hugh Mullins and divers other persons whose names are unknown to this grand inquest certain counterfeit coin, paper money and other token of value, commonly called green articles, green coin, paper goods, bills, green paper goods, green goods, business that is not legitimate, cigars and green cigars, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same."

Upon writ of error the Supreme Court affirmed such conviction and the judgment of affirmance is now before this court.

The sufficiency of the indictment is challenged, but we find no assignment of error permitting us to consider that question. It is, indeed, assigned for error that the Sessions denied a motion to quash for insufficiency; but quashing an indictment is discretionary.

We are asked to review the trial under the act of May 9th, 1894 (*Gen. Stat.*, *p.* 1154, *pl.* 170), which enacts that "the entire record of the proceedings had upon the trial of any criminal cause may be returned by the plaintiff in error therein with the writ of error, and when so returned shall form a part thereof, and on the argument such entire record shall be considered and adjudged by the appellate court." The language of this statute is not technical. The record intended is a written history of the proceedings at the trial including the evidence adduced. No provision is made for authentication of this record unless one is implied by the direction that it shall be "returned." A fair construction of the statute is that the plaintiff may cause this record to be returned by the trial court. It certainly must, in some way, be authenticated, and we see no other satisfactory way than by that court's certificate. Proper practice would seem to be for the plaintiff in error to require in his writ this so-called record, which will naturally then be embraced in the court's return. In the present case, there was furnished merely a written stipulation by the attorneys that the printed book contains a correct report of the evidence taken at the trial and copies of the exhibits. We regard this as insufficient to bring the statute into operation.

The decision of the cause, therefore, must turn on the bills of exceptions. The Supreme Court refused to consider exceptions to testimony declared in that court to be "reprehensible." The reason given for such refusal was that the inference to be drawn from the several bills of exceptions must be that the defendant's objections were made to the questions and answers, *i. e.*, to answers that were responsive to illegal questions to which no objection was made at the time of asking. If such must be the inference, the conclusion of the court was

correct; but we think that too narrow a view was taken of the bills of exceptions. A transcript of the evidence had been prepared in advance of signing the exceptions. In it appeared, in each case of admission of alleged illegal evidence, the question or offer, an objection seasonably taken, the ruling of the court, a brief note of exception and then the answer. In some cases there was not sufficient space to write and sign the formal exceptions, and in order to have them certified separate slips were prepared, reciting in each case that the defendant had prayed exception to the admission of the question and answer or other evidence stated, which slip was pasted in the margin of the transcript, at the proper place, and signed and sealed by the judge. In the Supreme Court these slips were considered as something apart from the transcript to which they were affixed, and as the sole evidence of the exceptions. As explanatory of the court's ruling that the objections came after the answers, it was said : " Our conclusion in this respect is necessarily based upon the bills of exceptions signed by the court below. Where such bills state the course of the trial differently from the printed copy of the stenographer's notes (as is the case in this paper-book), the appellate court relies exclusively upon the certificate of the judicial officer." We think that the bills of exceptions drew to themselves all appropriate matter to which they were affixed and that their recitals were only intended as condensation. We have therefore considered the evidence forming the subject of the exceptions. We agree with the view expressed in the Supreme Court that it was illegal, and we hold that its admission must work a reversal. It was said, *obiter*, in the Supreme Court, that the legitimate proofs established a case upon which the judgment could safely rest, and that it was difficult to believe that the "irrelevant and inconsequential narrations" wrongly admitted in evidence could have harmed the defendant; but, on error, reversal is required if it appears that the illegal evidence *may* have been harmful. *Ruckman* v. *Bergholz,* 8 *Vroom* 437, 441.

We cannot be sure that the jury would have found the legitimate proof sufficient. It was quite meagre, consisting mainly of testimony that the defendant had hired the premises where the unlawful practices were pursued and had been seen there on a few occasions. This was supplemented by the narrations of a United States post-office inspector of the methods of different gangs, as he called them, engaged in schemes like those charged in the indictment in this case, and particularly those of the " Ryan gang," of which the defendant was assumed to be the head. He produced letters and circulars received through the mails, and these were admitted in evidence. His testimony on these subjects was altogether hearsay. He was also permitted to testify to a particular offence of the character charged in the indictment, committed at South Bethlehem, Pennsylvania, in which offence he identified the defendant as participating.

The general rule is that the state may not, for the purpose of showing that a defendant would be likely to commit the crime charged against him, prove that he had committed other crimes, although of like nature. *Clark* v. *State,* 18 *Vroom* 556, 558. Upon the trial of a person for one crime, evidence that he has been guilty of other crimes is irrelevant. *Meyer* v. *State,* 30 *Id.* 310; *Parks* v. *State, Id.* 573 ; *Leonard* v. *State, ante p.* 8. There are exceptions to this rule, most of which are well summarized by Mr. Justice Dixon in the case of *State* v. *Raymond,* 24 *Id.* 260, 264. The testimony now being considered comes within none of them, nor within any other that I have been able to find.

The judgment of the Bergen Sessions and that of the Supreme Court affirming it must be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GUMMERE, LUDLOW, ADAMS, BOGERT, HENDRICKSON, NIXON.   10.