JOHN A. COLL, RESPONDENT, v. LEHIGH VALLEY RAIL-
ROAD COMPANY, APPELLANT.

Submitted November 6, 1924—Decided September 4, 1925.

Negligence—Federal Employers' Liability Act—Injury to Rail-
road Employe Through Defective Brake-staff—Court Not in
Error in Instructing That the Plaintiff Was Engaged in In-
terstate Commerce—Reasonable Care of Employer to Guard
Against Latent Defects in Equipment Considered at Length
—Safety Appliance Act Also Invoked—Charge to Jury Re-
garding Latent Defects Considered at Length—Duty of Plain-
tiff to Minimize Damages—Judgment For Plaintiff Affirmed.

On appeal from the Warren Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KATZENBACH.

For the appellant, *Smith & Smith,* and *Edward A.
Markley.*

For the respondent, *W. Reading Gebhardt.*

PER CURIAM.

The plaintiff was a freight brakeman in the employ of
the defendant company, and on the night of October 30th,
1922, while in the course of his employment, sustained severe
injuries as a result of the breaking of a brake-staff, or shaft,
while he was setting the hand-brake on a car. Claiming
that he was at the time engaged in interstate commerce, he
brought suit pursuant to the federal statutes in that behalf,
and obtained a judgment which is before us for review. A
number of points are made for reversal, and will be dealt
with in the order wherein they appear on the briefs.

The first point is that the trial court erred in instructing
the jury as a court question that plaintiff was engaged in
interstate commerce. This instruction was correct. The

evidence shows, without dispute, that plaintiff was participating in the making up of a train, some part of which, it is true, was destined for points in the same state (Pennsylvania), but other cars in which were in transit to points outside that state.

2. The second point, as stated in heavy-faced type in appellant's brief, is that—

"The trial court erred in instructing the jury that they could find a verdict for the plaintiff solely on the theory that the defendant was negligent, in that it did not exercise reasonable care to discover and remedy the defect in the brake-staff when there was no evidence adduced at the trial to support that theory."

A number of pages of the brief are devoted to this point, but the particular grounds of appeal relied on are not made very plain to us. We gather that, according to appellant's view, there was nothing to show how long the defect in the brake-staff had existed, and, consequently, there was no basis for application of the rule requiring discovery and rectification within a reasonable time if discovery would result from reasonable care in inspection, &c. The car was not a Lehigh Valley car, and it does not appear how long it had been under defendant's control; but the rule, as laid down by the Court of Errors and Appeals in *Anderson* v. *Erie Railroad Co.,* 68 *N. J. L.* 647 (at *p.* 649), which is, of course, binding on us, is that on receipt of the car the company is required to make a "cursory examination;" "an inspection for defects visible or discernible by ordinary examination;" "such examination as would be likely to discover conditions rendering a car so constructed unfit for safe transportation on the company's line." When it is considered that the brake-staff twisted off under the plaintiff's hand as he was setting the brake, as the result of a crack showing on the outside of the shaft above the cotter pin—so the testimony ran—it seems manifestly for the jury to say whether such defect could and should have been discovered on a "cursory examination" and the car retired from business until it was rectified.

It is further urged, under this point, that the court failed to include an instruction that the defendant was entitled to a reasonable time after discovery to rectify the defect. The court was not requested so to charge, and we fail to find any adequate exception raising the point. Hence, it is unnecessary to consider whether, in any event, it would not be the duty of defendant promptly to withdraw the car from service until repairs were made.

3. The next point is that there was error in instructing the jury that the complaint counted on the "Safety Appliance" act, as well as the Federal Employers' Liability act. This seems clearly to be without merit. The complaint invokes both acts by name in perfectly plain terms, and counsel for defendant were specifically apprised of this on the opening.

4. The next point alleges error in refusing to direct a verdict for defendant. If we are correct in what has been said above, a verdict could not properly have been directed.

5. The next point relates to that part of the charge quoted in the thirteenth ground of appeal. In discussing contributory negligence and its bearing on the case, the court pointed out that it applied only to damages in any event, and that even this rule "would not apply if the negligence of the defendant consisted in violating the Safety Appliance act as to providing an efficient brake. In that case the statute says that the prorating phase of the statute shall not apply. *It only applies in case the defendant was negligent as to the inspection part of the alleged negligence.*" It is the italicized sentence that is urged for error.

We are not required to consider this ground of appeal (which has not been quoted in full) because it contains several distinct propositions, some of which were proper. *Engle* v. *State*, 50 *N. J. L.* 272; *State* v. *Contarino*, 92 *Id.* 381; 105 *Atl. Rep.* 197; *State* v. *Spallone*, 97 *Id.* 221; 117 *Atl. Rep.* 151. But apart from this practice rule, we think no harmful error was committed. The point of the present objection seems to be that when the judge spoke of the "inspection part of the alleged negligence," the jury must have

understood him to confine contributory negligence to lack of inspection alone, excluding failure to repair, and so on. But reading the instruction in full, it is plain that he was drawing a distinction between liability under the general act and under the Safety Appliance act, and that while it was a verbal inaccuracy to speak of "inspection part," the jury could not have been misled into drawing the find distinction now suggested by counsel.

6. The sixth point challenges instructions permitting the jury to find that the hand brake was not efficient, the argument being that there was no evidence to show this. In view of what has been said above, this point needs no particular discussion.

7. The seventh point relates to the defendant's requests to charges numbered 8 to 12, inclusive, and not charged in the language in which they were presented. No. 8 is as follows:

"8. The defendant is not liable for a latent defect in the material of which the brake-staff was constructed unless said latent defect would have been revealed by customary inspection which is made by railroad companies."

Anticipating a refusal of No. 8, the requests proceeded as follows:

"If the court refuses to charge No. 8, then we request the court to charge as follows:

"9. The defendant is not liable for the latent defect in the material of which the brake-staff was constructed unless said latent defect would have been revealed by a reasonably careful inspection.

"10. The defendant was not an 'insurer of the plaintiff's safety as against a latent defect of the brake-staff.

"11. The defendant's duty in respect to a latent defect in the brake-staff was to exercise reasonable care to guard against such defects. If the defendant exercised such care in this case the defendant is not liable for the injuries caused by such latent defect, and the defendant cannot recover.

"12. If the defendant, in making this inspection of the brake-staff in question, made such an inspection thereof as was usually made by reasonably careful and prudent rail-

road companies, or if the inspection that is usually made by reasonably careful railroads of brake-staffs would not have revealed such a defect, then the plaintiff cannot recover, and the verdict must be for the defendant."

We think request No. 8 was properly refused, as we do not understand that the "customary inspection by railroad companies" is a controlling test of reasonable care. For authority on this point we need not go outside of appellant's brief, quoting from 26 *Cyc.* 1140, the rule as follows: "Customary methods of inspection, *while not conclusive upon the question of negligence,* will, as a rule, decide the duty of the master" (italics ours). If not conclusive, the request was manifestly unwarranted as absolutely controlling the jury on the point.

As to the four alternative requests. No. 9 was substantially charged, the court saying:

"The defendant says that even if it had made a reasonably careful inspection of this arm that it could not have been discovered. If, by a reasonable inspection of the brake-arm, this defect could not have been discovered, then, of course, the defendant would not be negligent upon that score."

As to No. 10, while the court did not tell the jury in so many words that defendant was not an insurer, the whole charge on this branch of the case was predicated on negligence, and nothing else, and they were plainly told that unless negligence appeared, defendant could not be held liable under the Federal Employers' Liability act. This was sufficient to cover the point, apart from any question that might remain whether request ten was too broad because not limiting the proposition to liability under that act.

Request eleven was fully covered on the score of duty, and was clearly too broad as excluding the Safety Appliance act, as it concludes "and the defendant (*sic*) cannot recover."

Request twelve has the same vice as request eight, and, moreover, there was no evidence that any inspection at all had been made.

The five requests quoted were therefore properly refused.

The eighth point relates to the exclusion of certain testimony bearing on the question whether the condition of the brake-staff would have been discovered by the ordinary methods of inspection in vogue among railroad men. There were five such questions excluded. Three of them were put to plaintiff's witness, Miller, on cross-examination. Miller was the conductor of the train on which plaintiff was working, and he described what he saw of the accident, and also the condition of the brake appliance after the accident. Although he was permitted, on cross-examination, to testify to the length of his experience in railroading, and to having seen car inspectors at work, the questions excluded, which were, in substance, whether the flaw he described would be discoverable in the ordinary inspection made by railroad inspectors, were obviously in the realm of opinion evidence. He had not been called or qualified as an expert, and defendant was simply endeavoring to use him in that capacity on cross-examination. The three questions, all of the same nature, were objected to as calling for a conclusion, i. e., whether someone else making a certain kind of inspection would have discovered the flaw. They were probably objectionable on that ground, but they were certainly incompetent as not proper cross-examination, and this alone is sufficient to justify the action of the court in overruling them.

As to the excluded question put to the witness Keiser, he answered a question precisely similar to it two pages farther on, so no harm was done. The same is true of the question to the witness McCracken.

9. The court refused to charge defendant's request No. 6: "If the evidence is evenly balanced on the question of negligence, then the plaintiff cannot recover, and the verdict must be for the defendant."

For reasons alread stated, this was vicious as ignoring the Safety Appliance act.

The tenth and last point raises a part of the charge relating to damages, and the loss of wages as an element of the same. The court said: "There has been testimony here as to whether the plaintiff declined to accept employment,

whether he was physically able to accept employment." (The following is quoted as the fifteenth ground of appeal.) "It was the duty of the plaintiff to minimize his damages as much as possible, and it was his duty to accept employment which he was able to perform, and thus minimize the damages which he might call upon the defendant to pay." (So far, the court was manifestly correct.) "What his duty was and how much he would or should have earned in that respect, if anything, is for you to say." (This is the sentence challenged as erroneous.)

The criticism is that the offending sentence left it to the jury to say whether plaintiff should try to minimize the damages at all. It must be conceded that the language is a trifle obscure, but we are unwilling to agree that it was harmful error requiring a reversal. The court plainly told the jury that plaintiff was under a duty to minimize damages as far as he could, by accepting other employment, and, as we read the passage, told them it was for them to decide what duty the plaintiff was under, specifically in view of his injured condition as they found that condition to be; in other words, such employment as he could obtain and accept in view of that condition, it was his duty to accept. What was left to them was not duty generally, but duty as measured by condition and ability. So interpreted, the charge is correct, disregarding the multifarious character of the ground of appeal.

This disposes of all the points made for the appellant. After a rather laborious examination of the voluminous briefs submitted, we conclude that there is no error requiring reversal, and the judgment is accordingly affirmed.