Clark v. State.*

*For affirmance*—THE CHANCELLOR, DIXON, MAGIE, VAN SYCKEL, BROWN, CLEMENT, COLE, MCGREGOR, PATERSON. 9.

*For reversal*—None.

SOLOMON CLARK, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. In the trial of an indictment for selling numbers in a lottery scheme it was not error to admit in evidence a book called a dream-book and a chequered paper with numbers upon it, both having been found on the premises where the numbers were sold and both being identified as being used in the policy business.

2. It was not error to refuse to charge upon such trial that there could be no conviction unless defendant expressly promised to pay or insure to the purchaser some money or thing in the event of the number being successful; such a promise might be inferable from the general character of the business in which the numbers were purchased.

3. A refusal to compel the state to elect between two or more transactions referable to a count on which there is an acquittal, presents no error injurious to the defendant.

4. The state cannot offer testimony to prove that the defendant committed an offence not charged, for the purpose of showing that he would be likely to commit the offence charged; but the objection to such testimony must be promptly interposed.

On error to the Supreme Court.

For the plaintiff in error, *J. J. Crandall.*

For the defendant in error, *R. S. Jenkins.*

The opinion of the court was delivered by

REED, J. The plaintiff in error was indicted for selling lottery policies. The first count in the indictment charged that the said Clark did receive from one Fannie Jordan certain

money, in consideration of which he unlawfully promised and. agreed to pay her a certain sum of money upon the event of her drawing certain numbers in a certain lottery then set up and opened in certain state lotteries and thereafter drawn in the state.

The second count charges that he received money from a certain person, to the grand inquest unknown, upon a similar understanding.

There was a conviction upon the first count.

The first and second assignments of error are grounded upon the permission granted to the counsel for the state, in the face of an exception, to ask Fannie Jordan, a witness for the state,. whether she had seen other persons than herself buy of the defendant; and, secondly, to ask the names of those persons.

The first count, as already stated, charged a sale to Fannie Jordan. She had, when placed upon the witness-stand, mentioned the fact of a sale to herself. The state was privileged, under the second count, to also prove a sale to some one other than the witness. For the purpose of showing that there were sales to persons other than she, the first question was relevant; and for the purpose of fixing the identity of the particular person with whom, in respect to such sale, the state wished to fix the defendant under the second count, the second question was equally relevant.

Thus far there was no error.

After the witness had, in answer to the second question, given the name of a Mr. Matthews as one of such purchasers, the state desisted, so far as appears by the record before us, from pursuing the matter of the sale to Matthews. The state then called two other witnesses, Carter and Rice, each of whom swore to a sale to himself. The counsel for the defendant moved to strike out the testimony of Carter on the ground that it related to a distinct offence from that sworn to by Fannie Jordan.

The testimony of George Rice, so far as it related to the fact of the sale to himself, was not objected to, and the legality of its admission is not before us for review. The error

alleged to arise by the admission of the evidence of Carter is, that after the state had proven one sale under the second count to one Matthews, it was permitted to prove a second distinct sale to Carter. The rule of evidence upon which this assignment is founded is entirely settled. As a general rule, the state, for the purpose of showing that the defendant would be likely to commit the crime charged, cannot prove that he committed other crimes, although of a like nature. But recognizing the force of this rule, I yet think that the defendant has not shown error in the record before us.

In the first place, the testimony of Carter, so far as the record informs us, was all in before the objection to it was taken. It does not appear that there was not an opportunity afforded to the counsel for the defendant to have made his objection earlier. The rule is established that counsel cannot take the chance of testimony making in his favor, and if it happens to be adverse, then interpose his objection. There is nothing to show that the defence here was not apprised of the point upon which the witness was about to speak, before his testimony relative to the sale to himself was delivered. The testimony being so in without objection, it cannot be said that the court erred in not striking it out.

In the second place, it cannot be claimed that because a witness has spoken of one transaction the state is precluded from proving by the same or other witnesses, that the offence charged was a different transaction.

It is not unusual in the progress of a trial for a witness to commence to detail the circumstances of a transaction, and it turns out to be a different assault or larceny from that charged.

The state has the privilege, as soon as the distinctness of the matter in the mind of the witness from the matter in the indictment is apparent, to abandon the former and proceed to prove the latter. This applies to all cases where the state has unintentionally been placed in this posture. Where it is obvious that the above course of procedure is for the purpose of prejudicing the interests of the defendant, by showing his tendency to commit crime, the court should hold the state to

Clark v. State.

the first offence which it attempts to prove. Upon error, I think this effort upon the part of the state should be apparent, and that it was erroneously countenanced by the trial court, before a reversal can be claimed. There was in the conduct of this trial, undoubtedly, something to show that this erroneous view was adopted by the court, for upon the state resting its case, the counsel for the defendant requested the court to compel the prosecution to elect which of these several transactions he would rely upon for a conviction. The court refused this request. To this refusal an exception was sealed. But it appears that there was no conviction upon the second count, and it was only upon this count that an election as requested was material.

Only one of the transactions, namely, the sale to Fannie Jordan, could refer to the offence charged in the first count, upon which there was a conviction. The others were all referable to the second count, charging the sale to a person unknown, upon which count there was an acquittal. The failure to elect could only have prejudiced the defendant's defence to the latter count, and the jury found that none of the sales, except the one to Fannie Jordan, were proven, and that was the single transaction sworn to under the first count. There was no error by which the defendant was injured in the refusal to compel an election.

It is also assigned for error that the court, under an exception, admitted in evidence a book proven to have been found upon the premises of the defendant, called a dream-book, and also a chequered paper with numbers upon the squares. It was testified that the dream-book was used to get numbers out of, and that both it and the chequered paper belonged to the policy business.

I think that this evidence was admissible in support of the testimony of the witnesses who swore that they purchased numbers, as tending to show the character of the business carried on in the place where the numbers were purchased, and in which business the numbers were used, and so tending to give significance to the act of purchasing the numbers.

It is lastly urged that the refusal to charge that the jury must find that the numbers were understood by the parties to be connected with some scheme of chance, and that defendant expressly promised to pay or insure to the purchaser, some money or thing, in the event of the numbers aforesaid being successful in some way in such scheme of chance, was error.

The request to charge that there must have been an express promise to pay upon a chance event, was too broad. The jury had the right to infer the promise, if the general character of the business in which the numbers were bought, was shown to be such as to support the inference. The purport of the transaction could be as clearly evidenced by a uniform and well-known course of dealing between the vendor and the purchasers of numbers, as if there was an express stipulation connected with each sale. If by such course of dealing with his patrons, the defendant held out to the purchaser of numbers the hope of gaining something upon the occurrence of a chance event, the transaction is within the statute. This disposes of all the assignments of error.

The judgment of the Supreme Court is affirmed.

*For affirmance* — THE CHANCELLOR, DIXON, KNAPP, MAGIE, REED, BROWN, CLEMENT, COLE, 7.

*For reversal*—PATERSON, 1.